## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MARGARET M. WOODS,**

    **Plaintiff,**

    **v.**

**LOCKHEED MARTIN CORPORATION,**

    **Defendant.**

**CIVIL ACTION NO.
1:18-CV-3501-SDG-CCB**

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Defendant Lockheed Martin Corporation's motion for summary judgment, (Doc. 113). In this action, Plaintiff Margaret M. Woods asserts claims for discrimination related to her demotion under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981.[1] (Doc. 27 at 2, 31–33). For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 113), be **GRANTED**.

---

[1] Plaintiff included a number of other claims, but the Court has previously dismissed them. (*See* Doc. 71).

## I.   PROCEDURAL BACKGROUND

Plaintiff initiated this action on July 20, 2018, against Lockheed Martin Corporation (Defendant) and Marilyn A. Hewson (who Plaintiff later voluntarily dismissed). (Docs. 1, 15). Defendant filed a motion to dismiss, (Doc. 5), which the Court granted, (Doc. 26). On September 25, 2019, Plaintiff filed an amended complaint, (Doc. 27), which Defendant also moved to dismiss, (Doc. 32).

On July 10, 2020, the undersigned recommended that the motion to dismiss the amended complaint be granted in part and denied in part. (Doc. 59). Specifically, the undersigned recommended that only Plaintiff's claims for sex discrimination under Title VII and race discrimination under Title VII and 42 U.S.C. § 1981, related to her demotion, be permitted to move forward. *Id.* at 17–21, 28. The District Judge adopted the recommendation in full. (Doc. 71).

Defendant Lockheed Martin filed its motion for summary judgment on June 7, 2021, (Doc. 113), to which Plaintiff responded, (Doc. 120), and Defendant filed a reply, (Doc. 123). Plaintiff filed a surreply on August 16, 2021, (Doc. 126), and a request that the Court take notice of certain interruptions Plaintiff had with her mail during the month of July 2021, (Doc. 127). The request to submit information

2

regarding the mail interruptions, which now appear to be resolved, is **GRANTED**. As to the surreply, the Court has repeatedly informed Plaintiff that she must seek and receive permission before filing a surreply. (Doc. 16 at 2 n.1; Doc. 59 at 6 n.3). Plaintiff continues to ignore this requirement and, as before, (Doc. 59 at 6 n.3), the Court does not consider the surreply, (Doc. 126).

## II.   MOTION FOR SUMMARY JUDGMENT

### A. Facts

#### 1. *Standards for Presenting Facts at Summary Judgment*

Unless otherwise indicated, the Court draws the following facts from Defendant's statement of undisputed material facts (SMF). (Doc. 113-6). Where indicated, the Court also draws facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Plaintiff failed to file a response to Defendant's statement of material facts, and that failure has consequences. The Local Rules state that the Court:

> will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ; (ii) states a

valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(2), NDGa. Because Plaintiff did not abide by the Local Rules and did not file a response to any of Defendant's facts, the Court deems each of Defendant's facts admitted for the purposes of Defendant's motion for summary judgment, where the proposed facts are material and supported by a citation to admissible evidence in the record. *See id.*; *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement.") The Court has verified that Defendant's assertions of fact discussed below are supported by the record citations Defendant provides in the SMF.

The Court has excluded assertions of fact that are immaterial or presented as arguments or legal conclusions, as well as those assertions of fact unsupported

by a citation to admissible evidence in the record or set forth only in Defendant's brief and not in the statement of facts. *See* LR 56.1(B)(1), NDGa. ("The Court will not consider any fact: (a) not supported by a citation to evidence . . . (c) stated as an issue or legal conclusion, or (d) set out only in the brief and not in the movant's statement of undisputed facts."). Nor has the Court considered the facts that Plaintiff sets forth only in her brief.

Critically, when it comes to the presentation and organization of the facts, Plaintiff did not abide by the Local Rules, which set forth several items that a respondent shall include when responding to a motion for summary judgment. The first, as noted above, is a response to the movant's statement of undisputed facts, (LR 56.1(B)(2)(a)(1)), which Plaintiff did not provide. Second, a movant shall provide a "statement of additional facts which the respondent contends are material and present a genuine issue for trial. Such separate statement of material facts must meet the requirements set out in LR 56.1(B)(1)." LR 56.1(B)(2)(b). This second filing is what gives the non-moving party the opportunity to inform the Court of those facts that she contends *are* in dispute—and when she does so, the moving party (here, the Defendant) must then file a response to each of the non-

5

movant's facts. LR 56.1(B)(3). Plaintiff did none of the things that she was supposed to do. She did not file a response to Defendant's statement of material facts, nor did she file her own statement of material facts that she contends are in dispute.

She did, however, include facts in her brief. But that is not sufficient. Other judges on this Court have recognized time and again that the Court cannot consider "'any fact set forth only in a brief and not in a response to the movant's statement of facts or in the respondent's own statement of additional material facts.'" *Lewis v. Residential Mortg. Sols.*, No. 1:17-CV-1422-ELR-WEJ, 2018 WL 5276221, at *2 (N.D. Ga. Aug. 31, 2018) (collecting cases) (quoting *Wills v. Polk Cnty.*, No. 4:16-CV-47-HLM, 2017 WL 9439105, at *5 n.4 (N.D. Ga. May 2, 2017)), *adopted by* 2018 WL 5276190 (N.D. Ga. Oct. 16, 2018), *aff'd by* 800 F. App'x 830 (11th Cir. 2020); *see also Ghertner v. Corp. Env'ts of Ga., Inc.*, No. 1:19-cv-2295-SDG-RGV, 2020 WL 4551269, at *2–3 (N.D. Ga. June 26, 2020) (noting that facts from an affidavit set forth only in the party's brief and not incorporated into a statement of additional facts were not properly before the court), *adopted by* 2020 WL 4577709 (N.D. Ga. July 31, 2020); *Rossi v. Fulton Cnty.*, No. 1:10-CV-4254-RWS-AJB, 2013

6

WL 1213168, at *17 n.13 (N.D. Ga. Feb. 4, 2013) (noting that Local Rules 56.1(B)(1) and (B)(2) require "that both the movant and opposing party must properly set forth evidence in statements of material fact and that the court will not consider any fact set out only in the brief and not in the statement of undisputed facts" (internal quotation marks and alterations omitted)), *adopted by* 2013 WL 1213139 (N.D. Ga. Mar. 22, 2013); *Richardson v. Jackson*, 545 F. Supp. 2d 1318, 1326 (N.D. Ga. 2008) ("[T]o the extent that either party includes any fact in a brief that is *not* included in the party's Statement of Material Facts (or in its response to the opposing party's Statement of Material Facts), the Court is not permitted to consider such fact in resolving any pending motion for summary judgment." (emphasis in original)).

This requirement—that a party responding to summary judgment include her facts either in a response to the moving party's statement of material facts or in her own statement of facts, and not in her brief—makes sense, and enforcing it is not a "form over substance" exercise. Local Rule 56.1 provides an orderly way for the parties to present and respond to the facts. Specifically, it "protects judicial resources by making the parties organize the evidence rather than leaving the

7

burden upon the district judge," and it "streamlines the resolution of summary judgment motions by focusing the district court's attention on what is, and what is not, genuinely controverted." *Reese*, 527 F.3d at 1268 (internal quotation marks and alterations omitted). Indeed, both parties and the Court have a right to rely on the organization that the Local Rule provides, and when, as here, Plaintiff presents her facts in her brief—unnumbered, and interspersed with argument and legal conclusions—the orderly process breaks down. Defendant understandably did not respond to Plaintiff's facts—as it would have been required to do under Local Rule 56.1(B)(3) if Plaintiff had presented them properly—meaning that the burden falls on the Court to organize Plaintiff's facts and then to try and decipher the record to figure out which of those facts are relevant, material, and disputed. That is not the Court's role. *See Reese*, 527 F.3d at 1268 (noting that Local Rule 56.1 protects judicial resources by putting the burden on the parties to organize the evidence and focus the court's attention on what is, and what is not, genuinely controverted). As such, the facts below come from Defendant's SMF and, when necessary, directly from the record evidence. That being said, the Court has viewed all of the evidence and factual inferences in the light most favorable to

8

Plaintiff, as it is required to do on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

### 2. *Material Facts*

Plaintiff is an African American female. (Doc. 117 at 60:13–14; 64:8–10). Defendant hired Plaintiff in 2003. (Doc. 113-6 at ¶ 1). In 2008, Plaintiff was selected as a quality manager on Defendant's C-130 aircraft flight line, and she was promoted to senior manager in 2012. *Id.* at ¶ 3; (Doc. 117 at 50:2–25, 51:1–3). In 2015, Defendant began implementing a reorganization plan known as "Next-Gen Aero," which involved an in-depth assessment of each company organization to reduce costs, consolidate positions, and otherwise ensure that the organization was operating as efficiently as possible. (Doc. 113-6 at ¶¶ 4, 5; Doc. 113-12 at ¶ 3).[2]

---

[2] Docket entry 113-12 is the declaration of Calvin Bryant, who has held various positions in human resources at Lockheed Martin. (Doc. 113-12 at ¶ 2). As explained in more detail below, he served on the Workforce Reduction Committee that evaluated Plaintiff and three of her colleagues. *Id.* at ¶ 7. Plaintiff objects to the declaration, opining that Mr. Bryant "has been utilized and a tool to produce this document because he's African American whereas he has not made decision

As part of the reorganization, the company combined a number of positions, down-leveled some employees, and eliminated some positions all together. (Doc. 113-6 at ¶ 6). The term "down-leveling" refers to a situation where a position is eliminated and the employee is moved to a lower-level position, with a corresponding reduction in title and salary, in response to changes in business conditions, workforce restructuring, a lack of available work, and/or other legitimate business interests. (Doc. 113-12 at ¶ 4). A demotion, on the other hand, is used to describe a corrective or disciplinary action taken because of an employee's conduct or performance. *Id.*

Defendant utilized its Reductions in Force policy as a basis for evaluating positions for elimination as well as for down-level. (Doc. 113-6 at ¶ 7). This policy required the creation of Communities of Interest (COI), which is a group of employees who have the same or similar skills, and who performed the same or

---

as it pertains to the Quality leadership organization during Plaintiffs tenure from 2005-2016 in flight operations." (Doc. 120-1 at 5–6). To the extent that Plaintiff is arguing that the declaration is not relevant, the Court disagrees. Mr. Bryant has knowledge regarding human resources policies at the company and he served on the Workforce Reduction Committee that considered Plaintiff's community of interest, and his testimony is therefore relevant.

similar work in the same or similar job classifications, within the same department or functional organization. *Id.* at ¶ 8; (Doc. 113-12 at ¶ 5). Employees placed in a COI are scored by their senior managers against a set of four factors: skill, knowledge, experience, and behavior. (Doc. 113-6 at ¶¶ 10, 11; Doc. 113-9 at ¶ 7).[3] Each employee was assigned an overall numerical rating from 1 (best) to 5 (worst) for each factor. (Doc. 113-9 at ¶ 6). The factor scores account for 70% of the employee's overall score, while the remaining 30% of the employee's overall score is based upon the employee's weighted performance ratings for the previous three years. (Doc. 113-6 at ¶ 12).

Once a COI is created, the company would designate a "COI Owner" to explain the business justification for any potential reduction in force. (Doc. 113-12

---

[3] Docket 113-9 is the declaration of Kristy Johnson, a Human Resources Operations Senior Manager in Defendant's aeronautics division. (Doc. 113-9 at ¶ 2). Plaintiff objects to this declaration, arguing that Ms. Johnson "failed to respond or participate in good faith" during discovery. (Doc. 120-1 at 7). She cites to portions of Ms. Johnson's deposition, where defense counsel objected to a line of questioning based on a lack of foundation. (Doc. 120-9 at 26–32). Plaintiff argues that defense counsel asked the witness not to respond, (Doc. 120-1 at 8), which is not accurate. The record reflects that defense counsel objected and instructed the witness to answer if she understood the question. (Doc. 120-9 at 30–31). Plaintiff's objection is overruled.

at ¶ 5). The COI Owner would then be responsible for attending a meeting of a "Workforce Reduction Committee" (WRC). *Id.* at ¶ 6. A WRC is made up of leaders from various organizations within the company, including legal, human resources, and operations. *Id.*; (Doc. 113-6 at ¶ 16). At the WRC meeting, the COI Owner would present the justification for the layoff or down-level of any specific employees. (Doc. 113-12 at ¶ 6). The WRC was responsible for reviewing the completed documentation to ensure compliance with the process and to ensure that the decision was sound and based on the documentation. (Doc. 113-9 at ¶ 5). The WRC provided the final approval as to which employees in the COI, if any, would be affected by a reduction. *Id.*; (*Doc.* 113-6 at ¶ 15).

As part of Next-Gen Aero, Defendant decided to combine two flight line senior manager positions into one, (Doc. 113-6 at ¶ 14; Doc. 113-9 at ¶ 6), and Defendant created a COI consisting of Plaintiff and three other senior managers: Bryant McKee, John Strickland, and Bryan Batt, (Doc. 113-6 at ¶ 9; Doc. 113-12 at ¶ 8). The COI Owner was James Bratton, (Doc. 113-12 at ¶ 12), who was also Plaintiff's manager, (Doc. 117 at 52:14–15). The WRC that provided final approval for the actions taken regarding Plaintiff's COI was made up of Calvin Bryant,

12

Edward Robbins, Diane Stefani, and Angela Carruth, with Kristy Johnson (a human resources manager) providing the WRC with relevant documentation and ensuring compliance with other company policies. (Doc. 113-6 at ¶ 17; Doc. 113-12 at ¶ 8). The WRC's review primarily consisted of a chart containing the four senior managers' factor scores and past performance ratings, pursuant to the Reduction in Force selection policy. (Doc. 113-6 at ¶ 18; Doc. 113-12 at ¶ 14).

Of the four senior managers in the COI, Bryant McKee, an African American male, had the best score with a score of 2.0, and he was transferred to a different senior management role in a different program due to his diverse skill set. (Doc. 113-6 at ¶ 19). John Strickland, a Caucasian male, received the next best score with a score of 2.05, and he was chosen for the consolidated senior manager position, where he began performing many of Plaintiff's duties, as well as his own. *Id.* at ¶ 20. Bryan Batt, a Caucasian male, received the third best score with a score of 2.23, but he was reclassified into a different position, like Mr. McKee. *Id.* at ¶ 21. Plaintiff received the lowest score with a score of 2.68, and she was initially identified for layoff by James Bratton and the WRC, but she was ultimately given the option to select a down-leveled position. (Doc 113-12 at ¶¶ 11–12). Per the Reduction in

13

Force policy, Defendant offered Plaintiff the choice between a lower-level manager position, which paid less than her previous senior manager position, or a layoff with severance. (Doc. 113-12 at ¶ 12; Doc. 113-9 at ¶ 13). Plaintiff accepted the lower paying manager position and was therefore down-leveled. (Doc. 113-6 at ¶ 24; Doc. 113-9 at ¶ 14).

### B. Summary Judgment Standard

Summary judgment is authorized when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The movant carries this burden by showing the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Crane v. Lifemark Hospitals, Inc.*, 898 F.3d 1130, 1134 (11th Cir. 2018).

14

Once the moving party has adequately supported its motion, the non-moving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 587. The non-moving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party cannot defeat summary judgment by relying upon conclusory assertions. *See Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997). Rather, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

15

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *See Anderson,* 477 U.S. at 249-50. A factual dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita,* 475 U.S. at 587. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (internal quotation marks omitted). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 259 (internal quotation marks omitted).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See id.* at 249; *Ryder Int'l Corp.*

*v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. *Anderson*, 477 U.S. at 249. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not preclude the entry of summary judgment. *Id.*

## C. Discussion

Defendant moves for summary judgment as to Plaintiff's only remaining claims, for sex discrimination under Title VII and race discrimination under Title VII and 42 U.S.C. § 1981, related to her demotion. (Doc. 113-1 at 1–3).

### 1. *Defendant's Argument for Summary Judgment and Plaintiff's Response*

Defendant argues that Plaintiff cannot make out a *prima facie* claim of disparate treatment on account of race under § 1981 and Title VII, or gender under Title VII. (Doc. 113-1 at 10). Specifically, Defendant argues that Plaintiff has not put forth any evidence showing that it intended to discriminate against Plaintiff on the basis of a protected characteristic (the only element of the *prima facie* case in a reduction-in-force case that Defendant disputes). *Id.* at 10–11. Defendant argues

17

that it adhered to its reduction-in-force policy and decided that Plaintiff was to be down-leveled by considering her skills and recent performance ratings as compared to the other three senior managers in her business unit, without considering her race or gender, and that Plaintiff has not presented evidence to the contrary. *Id.* at 11–12. Defendant states that although Plaintiff believes that the factor scores and previous performance ratings were "very biased" and "overly biased," she has not provided evidence to support such allegations and relies only on her own opinions. *Id.* at 13.

Defendant then argues that even if Plaintiff could make out a *prima facie* case, it has articulated legitimate, non-discriminatory reasons for the decision to down-level Plaintiff and place Mr. Strickland in the consolidated senior manager position. *Id.* at 14. Defendant argues that once it began its reorganization, it relied on its reduction-in-force policy, and it explains that by using COIs and the combination factor scores and prior performance reviews, the company eliminated the possibility of discrimination because it delegated the decision to layoff or down-level employees to disinterested, unbiased members in the WRC. *Id.* at 15. Defendant maintains that Plaintiff has not attributed a discriminatory animus to

18

the members of the WRC. *Id.* Defendant states that while Plaintiff implied that James Bratton wanted to discriminate against her, upon learning in her deposition that Mr. Bratton actually played a role in keeping her employed, she then claimed that Mr. Bratton was simply an unwitting participant in a grand conspiracy to eliminate African American employees from the company. *Id.* at 15–16.

Nor, Defendant argues, can Plaintiff establish that its legitimate reasons for down-leveling her were pretext for discrimination. *Id.* at 16–17. Defendant argues that Plaintiff may have planned to use testimony from a down-leveled African American senior manager, Elvis Roye, to support an argument of pretext, but Defendant points out that although Mr. Roye believed the decision to down-level him was unfair, he stated that he cannot say that the decision was based on his race or any other protected characteristic. *Id.* at 17. Defendant further makes the point that, although the WRC did not review Plaintiff's resume or any other employees' resume in arriving at its decision to down-level Plaintiff, Mr. Strickland has been in the aviation industry for a few years longer than Plaintiff has and that any certifications or degrees that Plaintiff has (and Strickland does not) are unnecessary for the consolidated senior manager position. *Id.* at 18–20.

In response, Plaintiff argues that the COI process is used to strategically place African Americans into lower pay brackets and that it was used "to remove the only Black female from [senior] leadership and flight operations." (Doc. 120-1 at 2). Plaintiff then argues that she has made a *prima facie* showing of discrimination because she was replaced by someone outside of her protected class. *Id.* at 3. Plaintiff states that Defendant's explanation for her demotion is pretextual and "disguised by myriad false derogatory statements throughout this case." *Id.* at 4. Plaintiff argues that she was more qualified than John Strickland, and that Elvis Roye previously managed both Plaintiff and Mr. Strickland, and Mr. Roye favored Plaintiff's experiences and capabilities. *Id.* at 6–7. Plaintiff reiterates that the COI process is used to strategically place African Americans into lower pay brackets, notes that Defendant has recently settled a class action lawsuit alleging racial discrimination, and maintains that Defendant is responsible for discriminatory actions taken against her. *Id.* at 9–10.

In reply, Defendant notes that Plaintiff has failed to respond to Defendant's statement of material facts and argues that those facts are therefore deemed admitted. (Doc. 123 at 2). Defendant also notes that Plaintiff has not filed her own

statement of additional material facts. *Id.* Defendant then argues that Plaintiff's citation to the class action that Defendant previously settled is not relevant and is inadmissible under Federal Rule of Evidence 408, and states that the class action was settled to avoid disruption because of the large number of class members and not because Defendant believed there was racial discrimination. *Id.* at 4–6. Defendant maintains that Plaintiff has no evidence that discrimination occurred, and quotes from Mr. Roye's deposition to show that he could not testify that he believed the company discriminated against African Americans or females as part of the Next-Gen Aero program. *Id.* at 7. Defendant argues that Mr. Strickland did not receive more favorable treatment than Plaintiff because all members of the COI were evaluated on the same factors, and therefore treated the same. *Id.* at 9. Defendant states that Plaintiff has not shown any discriminatory intent or animus by the members of the WRC, and the WRC did not review Mr. Strickland or Plaintiff's years of experience in making its decision. *Id.* Defendant argues that while Plaintiff has offered her opinion that discrimination occurred, there is no evidence of such and that this is not enough to defeat summary judgment. *Id.* at 10–11. Defendant further notes that the company did its own investigation to see

if it violated its rules when it down-leveled Mr. Roye and Plaintiff, but did not find a violation. *Id.* at 12.

### 2. *Disparate Treatment*

Defendant moves for summary judgment as to Plaintiff's only remaining claims, for sex discrimination under Title VII and race discrimination under Title VII and 42 U.S.C. § 1981, related to her demotion. (Doc. 113-1 at 1–3). Both Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the Court analyzes the Title VII claim with the understanding that the analysis applies to the Section 1981 claim as well.

### a. *The Proper Framework for Analysis*

"In order to establish a [discrimination] case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence" *Id.* "The analytical framework and burden of production varies depending on the method of proof chosen." *Id.* The parties focus their arguments on circumstantial evidence, but the Court first briefly

addresses direct evidence (there is no evidence at all of statistical evidence in this case).

### b. Direct Evidence

"Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption." *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999) (internal quotation marks and alterations omitted). "[D]irect evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989)). "If an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Schoenfeld*, 168 F.3d at 1266.

Here, there is no direct evidence of discrimination. There are no facts in Defendant's statement of material facts that even suggest direct evidence of discrimination, (*see generally* Doc. 113-6), nor does Plaintiff make a direct-evidence argument in her response brief, (*see generally* Doc. 120). Finding no direct evidence of discrimination, the Court moves on to consider the circumstantial evidence.

### c. *Circumstantial Evidence*

If a plaintiff seeks to prove her case by circumstantial evidence, one way she may do so is by utilizing the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Defendant argues that Plaintiff cannot show one of the four prongs necessary for a *prima facie* case of discrimination and that, even if she could, there are legitimate, non-discriminatory reasons for Defendant's decision to down-level her, and that those reasons are not pretextual. (Doc. 113-1 at 10–18).

---

[4] The Eleventh Circuit has held, however, that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff may also use the alternative "convincing mosaic" theory to survive summary judgment by presenting circumstantial evidence "that creates a triable issue concerning the employer's discriminatory intent." *Id.* at 1328. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks and footnote omitted). Although the parties present their arguments in terms of the *McDonnell Douglas* framework, the Court simply notes—for the same reasons discussed below regarding Defendant's legitimate reasons for down-leveling Plaintiff and the lack of pretext—that Plaintiff has not presented a convincing mosaic of discrimination.

"When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (*en banc*). The *prima facie* test is modified, slightly, when the adverse employment action is a demotion. In that scenario, under the fourth prong, a plaintiff can make a *prima facie* case by showing that she was replaced by someone outside of her protected class. *See Ezell v. Wynn*, 802 F.3d 1217, 1226 (11th Cir. 2015) (*citing Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000)); *Walker v. Aldi Food Mkt. Inc.*, No. 5:17-CV-3 (MTT), 2018 WL 6816080, at *4 (M.D. Ga. Dec. 27, 2018) ("A plaintiff may satisfy the fourth element of a prima facie case for discriminatory demotion by showing either that she received less favorable treatment than a similarly situated employee or that she was replaced by someone outside her protected class."). And the *prima facie* case is modified again in a reduction-in-force scenario, where "the plaintiff must show (1) that she is a member of a protected

class, (2) that she was terminated, (3) that she was qualified for another position at the time of termination, and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995).

"If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Id.* (internal quotation marks and alterations omitted).

i. *Prima Facie* Case

Here, for purposes of determining whether Plaintiff can establish a *prima facie* case, Defendant does not contest that Plaintiff is a member of a protected class (she is both African American and a woman), that she was subjected to an adverse action, and that she was qualified. (Doc. 113-1 at 10). Defendant notes the various

26

formulations of the fourth element—the traditional "treating similarly situated employees out of the protected class more favorably" approach, the "replaced by someone outside the protected class" approach to demotions, and the "intended to discriminate by not considering the plaintiff for another position" analysis for reductions in force. *Id.* at 10–11. Ultimately, Defendant appears to argue the case as a reduction in force, noting that the company rigorously adhered to its reduction-in-force policy and did not consider Plaintiff's gender or race in deciding to down-level her. *Id.* at 11–13. The problem is, this case does not fit neatly into the reduction-in-force framework, largely because Plaintiff was not actually terminated. (Doc. 113-6 at ¶ 24; Doc. 113-9 at ¶ 14); *see also Coutu*, 47 F.3d at 1073 (noting that the *prima facie* case is modified when "the plaintiff is *terminated through a reduction in force*" (emphasis added)). Rather, what happened here was most like a demotion. Although Plaintiff was initially identified for termination through a reduction-in-force process, Defendant ultimately offered her a lower paying, lower-level manager position, which she took. (Doc. 113-12 at ¶ 12; Doc. 113-9 at ¶¶ 13, 14; Doc. 113-6 at ¶ 24). This case, therefore, seems to more naturally fit within the *prima facie* framework for demotions, where Plaintiff can satisfy the

final prong by showing that she was replaced by someone outside of her protected

class. She can easily satisfy this element because she was demoted and her prior

position was filled by John Strickland, a Caucasian male. Therefore, Plaintiff has

made a *prima facie* case of race and sex discrimination.

ii.    Non-Discriminatory Reasons and Pretext

Defendant argues that even if Plaintiff could prove a *prima facie* case of

discrimination, Defendant has shown legitimate, non-discriminatory reasons for

the down-level and that Plaintiff cannot show that the reasons for the adverse

action are pretext for discrimination. (Doc. 113-1 at 14–18). Defendant submits that

Plaintiff was down-leveled as part of a reorganization implemented through the

Next-Gen Aero program because she had the lowest score out of all of the

employees in the COI that she was a part of. *Id.* at 3, 4, 7, 11, 14–16; (Doc. 113-6 at

¶¶ 9, 14; Doc. 113-12 at ¶¶ 6, 8, 11–12). The company implemented the

reorganization plan to reduce costs, consolidate positions, and otherwise ensure

that the organization was operating efficiently. (Doc. 113-6 at ¶¶ 4, 5; Doc. 113-12

at ¶ 3). The members of the WRC considered the factor scores (which assess skill,

knowledge, experience, and behavior), as well as the employees' weighted

performance ratings for the previous three years. (Doc. 113-6 at ¶¶ 10–12, 18; Doc. 113-9 at ¶ 7; Doc. 113-12 at ¶ 14). There is no evidence to suggest that the reorganization plan permitted the members of the WRC to consider things like Plaintiff's race or gender, or that the actual decision to down-level Plaintiff was based on anything other than the gender-and-race neutral criteria that the WRC members were obliged to weigh. Defendant's burden to show a legitimate, non-discriminatory reason is "merely one of production," *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*), and it is easily satisfied here. Therefore, because "the proffered reason is one that might motivate a reasonable employer, . . . [Plaintiff] must meet that reason head on and rebut it" to make a showing of pretext. *Id.* at 1030.

"To show pretext, [a plaintiff] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (internal quotation marks omitted). A plaintiff may not simply "recast an employer's proffered nondiscriminatory reasons or substitute

her business judgment for that of the employer." *Id.* (internal quotation marks and alteration omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and she cannot succeed by simply quarreling with the wisdom of that reason." *Id.* (internal quotation marks and alteration omitted). "Rebuttal therefore requires 'significant probative' evidence of pretext; conclusory allegations alone are insufficient." *King v. Ferguson Enters., Inc.*, 971 F. Supp. 2d 1200, 1218 (N.D. Ga. 2013) (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996)), *aff'd*, 568 F. App'x 686 (11th Cir. 2014).

Plaintiff's arguments on pretext are at times difficult to follow, but they largely amount to unsubstantiated allegations about the integrity of the procedures that Defendant used in conducting the reduction-in-force process. For example, she states, without citation to any evidence, that the COI process "is used to strategically place African Americans into lower pay brackets." (Doc. 120-1 at 2). None of the facts addressed above support this assertion.

Plaintiff asserts that she was more qualified than Mr. Strickland and that Mr. Elvis Roye allegedly shared this view. *Id.* at 6–8. But the evidence detailed

above shows that Defendant utilized objective criteria in evaluating the four members of the COI (including Plaintiff and Mr. Strickland) and that Mr. Strickland had a higher score than Plaintiff did. (Doc. 113–6 at ¶¶ 20, 22). And in this context, Plaintiff "cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [person] who received the position [s]he coveted." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted). Rather, she "must show that the disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (internal quotation marks omitted). Indeed, she has to show not merely "that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Id.* (internal quotation marks omitted). And this she has not done. Plaintiff questions the value of Mr. Strickland's military service (which she does not have), (Doc. 120-1 at 6), but at the end of the day it is clear that the WRC did not even consider that experience, (Doc. 113-6 at ¶ 18), and, regardless, Plaintiff points to nothing to suggest that no reasonable person, exercising

31

impartial judgment, would have selected Mr. Strickland over her. She offers argument about the number of customers she worked with, compared to the number of customers that Mr. Strickland worked with, but none of those facts are supported by citations to evidence, they are set out only in her brief (and not in any statement of fact, as required by the Local Rules), (Doc. 120-1 at 7), and even if considered, they amount to nothing more than Plaintiff disagreeing with the company's decision. *See Chapman*, 229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

Nor does Mr. Roye's testimony help Plaintiff's case. When he was asked in his deposition whether the reduction-in-force process was fair to women and African Americans, he essentially said that there was no evidence from which he could say that the company discriminated. (Doc. 115 at 18:21–20:10). Plaintiff further states that Defendant's explanation for her demotion is pretextual and disguised by false derogatory statements made in the case, but she does not

address the company's legitimate reasons for her down-level head-on or with any supporting evidence. (Doc. 120-1 at 4).

Plaintiff cites to *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017), where a court considered (and denied) a preliminary settlement of a proposed class action complaint.[5] It is not clear how this case fits into Plaintiff's argument here, or whether she would have even been part of that class (if a class was ever certified in that case)—but suffice it to say that there is nothing from that case from which the Court can infer that Defendant's reasons for down-leveling Plaintiff here were pretext for discrimination.

Plaintiff intersperses other factual arguments in her brief that, in many instances, are hard to follow—in no small measure due to Plaintiff's failure to respond to Defendant's statement of material facts or provide a statement of facts that she contends are in dispute. At the end of the day, Plaintiff fails to set forth any evidence that Defendant's actions were motivated by race or gender, let alone "'significant probative' evidence of pretext." *See King*, 971 F. Supp. 2d at 1218.

---

[5] It appears from a review of the docket in the *Ross* matter that the case was eventually settled and dismissed.

33

Rather, Plaintiff's arguments amount to her own, unsupported beliefs that the company discriminated on the basis of race and gender—and that is not sufficient to carry the day at summary judgment. *See id.* at 1211 ("[A] plaintiff's conclusory, uncorroborated allegations in an affidavit or deposition do not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990))). Therefore, there are no genuine issues of material fact regarding the reasons for Plaintiff's demotion or pretext, and Defendant is entitled to summary judgment.

## III.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 113), be **GRANTED**.

Because this case presents no other issues referred to Magistrate Judges under Standing Order 18-01, the Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED,** this 24th day of August, 2021.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

34